# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKYE SMITH, | Case No. 06-cv-01186 AWI TAG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM A FINAL ADMINISTRATIVE DECISION (Doc. 2) |
| vs. | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jackye Smith ("Claimant" or "Plaintiff") seeks judicial review of an administrative decision denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (collectively "disability benefits"). Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner. Claimant filed her complaint on August 30, 2006 (Doc. 2), and her opening brief on June 10, 2007.[2] (Doc. 22). The Commissioner filed his opposition on June 12, 2007. (Doc. 23). Claimant did not file a reply brief.

///

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] Claimant refers to her opening brief as a motion for summary judgment. (Doc. 22). Although briefs filed in Social Security cases previously were deemed summary judgment motions, for several years this Court has termed the parties' submissions as "opening briefs," "responses" or "oppositions," and, "reply briefs." These Findings and Recommendations continue this trend.

## JURISDICTION

On July 11, 2003, Claimant protectively filed for DIB and SSI, and, on July 28, 2003, she filed what has been construed as a concurrent application for DIB and SSI. (Administrative Record ("AR") 93-96, 308; see AR 15, 21; Doc. 23, 2:2-4). Claimant alleged that she suffered impairments that prevented her from working after July 7, 2003, and alleged an onset date of July 10, 2003. (AR 93, 96). Claimant's applications were denied initially and on reconsideration. (AR 43, 52, 73-76, 79-84). After timely requesting a hearing, Claimant, her attorney, and vocational expert ("VE") Thomas Dachelet appeared before Administrative Law Judge ("ALJ") Stephen W. Webster on November 15, 2005. (AR 85, 320-352). ALJ Webster found that Claimant was not disabled in a written decision dated January 13, 2006. (AR 15-21). The Appeals Council denied Claimant's request for review on July 27, 2006. (AR 4-7). The ALJ's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. Id. On August 30, 2006, Claimant timely filed this action. (Doc. 2).

## STATEMENT OF FACTS

The relevant facts have been presented in the administrative hearing transcript, the ALJ's decision, and Claimant's and the Commissioner's briefs, and, therefore, Claimant's testimony will be summarized here. To the extent necessary, additional facts will be addressed in this Court's analysis.

As an initial matter, Claimant filed a prior application for disability benefits under the Act, which an ALJ denied on December 17, 1996. (See 32-67). The Appeals Council denied Claimant's request for review on April 7, 1998. (AR 68-72). Claimant did not seek judicial review. (See AR 15).

At the hearing, Claimant testified that she was born on July 19, 1956, making her almost 49-1/2 years old at the time of ALJ Webster's January 13, 2006 decision. (AR 12-24, 324). Claimant, her husband, and her 9 and 16 year old children lived together in a house. (AR 324-25). Claimant last worked on July 7, 2003, but testified that she collected approximately three additional weeks of

wages for her accrued vacation time. (AR329). According to Claimant, she was denied welfare benefits for the first year after she stopped working, but that is now her sole source of income. (Id.). Her husband attends school and does not work. (AR 325). After graduating from high school, Claimant completed one year of modeling and charm school at a fine arts college. (AR 328).

Claimant's medical ailments include injuries to her right ankle and wrist, a left heel spur, depression, three or four migraine headaches weekly, tremors, and degenerative joint disease from her arthritis. (AR 329-330, 344). Claimant explained that she feels a sharp or burning pain in the knuckles and joints of her fingers, whenever she picks up an item the wrong way or one that is too heavy for her. (AR 331). She further testified that her wrist clicks and hurts when, for example, she washes her hands. (AR 331-332). In response to questions posed by her attorney, Claimant testified that she has problems controlling her fingers when using a keyboard and her attempts to forcibly control them causes pain. (AR 341-342). Claimant further reported that there were many activities that she no longer is able to do because of finger pain and her inability to control her fingers. (AR 342). Claimant added that she sees a physician biweekly for this problem. (Id.). Claimant added that she also experiences pain in her shoulders, knees, and her right ankle, noting that medication alleviates the pain sometimes but she also receives injections from her doctor. (AR 332). She believed that the pain worsens when the ambient temperature is cold. (Id.). Claimant further testified that she sees a mental-health therapist, takes courses, and takes prescription medication on a regular basis. (AR 343).

With respect to her work history, Claimant explained that, as a temporary social services aide from October 2000 until January 2001, she answered the telephone. (AR 337). Claimant testified that she had a gaming license, and had worked as a Keno writer and a direct support professional license ("DSP"), which enabled her to work with physically and mentally disabled people. (AR 337-38).

Regarding her exertional capacity, Claimant testified that she has to walk around after sitting for 45 minutes because her knee becomes stiff. (AR 332). In addition, she cannot walk for more than 20 minutes without her cane, although she does not use her cane at home because she can sit down as necessary. (AR 333). Claimant testified that she can lift her 17 and 19 pound

grandchildren, one at a time, and, if she is sitting down, she can hold one of them for 10 minutes. (AR 333-334). Claimant opined that she likely would not be able to climb stairs, but she can avoid them. (AR 334).

As to her nonexertional limitations, Claimant testified that she fluctuates between the ability to understand a newspaper or magazine article and needing to re-read it three or four times. (AR 334). She acknowledges that it is her responsibility to organize and pay the bills. (Id.). Claimant explained that she is expected to overcome her disabilities and be able to fix everything, although her ailments interfere with her ability to do so. (AR 335). Claimant provided additional examples of how various life situations, together with her physical problems, have caused and continue to make her depressed. (AR 335-336).

As to her daily life activities, Claimant testified that her driver's license had been revoked because of her tremors, noting that the DMV reported that it was due to seizures, a mistake that she hoped to rectify.[3] (AR 325). Claimant further testified that, without a grip or handle on the bathtub, she falls getting in and out of the tub. (AR 326). In addition, her arthritis prevents her from reaching for things or doing activities that involve using her shoulders, such as vacuum cleaning or dusting above shoulder level. (Id.). Claimant stated that she did the laundry, noting that she could sit and fold it at her own pace. (Id.) Claimant reported that her children were able to care for themselves, but she sometimes cooked. (Id.). According to Claimant, she is too busy to watch television ("t.v."), but often listens to it while doing other things, such as preparing lists of things that need to be done. (AR 327). She testified that she constantly thinks about things such as who will do housework that she cannot, which of two group-therapy "classes" she has to attend, and whether she or the children have a doctor's appointment. (Id.). She does no yard work. (AR 326). When asked about activities that she enjoyed and could do, Claimant testified that she occasionally reads and she watches t.v. for one or two hours daily. (AR 326-27). Claimant stated that, because her friends work, she cannot visit them. (AR 328). Claimant further testified that she has neither the money nor the inclination to

---

[3] Claimant testified that she had a "seizure," during which she was shaking, that was diagnosed as a tremor, and added that she felt safer not driving until she obtained an accurate diagnosis and received the appropriate treatment. (AR 325).

go out to see a movie, but she rents them to watch at home.  (Id.).  Claimant reported that she frequently attends church.  (Id.).

The ALJ then questioned VE Dachelet.  (AR 346-349).   The ALJ posed a hypothetical question that involved an individual who was the same age and had the same education and work history as did Claimant.  (AR 346).   In addition, this hypothetical individual retained the residual functional capacity ("RFC") to lift ten pounds occasionally, stand or walk two out of eight hours, and sit six out of eight hours.  (Id.). The VE testified that, out of Claimant's past relevant work, this hypothetical individual could perform the sedentary position of a front desk receptionist.  (Id.).  VE Dachelet further testified that the hypothetical individual had limited transferrable skills, which included operating a phone system, cashiering, and oral and written communications.  (AR 346-347).  In the ALJ's second hypothetical, the same individual would be limited to simple, routine, repetitive work.  (AR 347).  The VE stated that such a person could not perform any of Claimant's past relevant work, but would be capable of working at any sedentary, unskilled job.  (Id.).   The VE cited, as examples, a loader of semiconductor dies, a stuffer, and a document preparer, for which there were approximately 80,000 available jobs locally and 800,000 jobs available in the national economy.  (AR 348).  The ALJ presented a third hypothetical question, in which the individual would require three or four unscheduled breaks per week that would last more than one hour.  (AR 348-349).  ALJ Dachelet reported that such an individual would not be able to perform any job in the national economy.  (AR 349).

Claimant's attorney questioned the VE about whether the following hypothetical individual would be able to perform a job available in the national economy:  an individual of Claimant's age, education, and work history, who would have problems performing work-related tasks in an eight-hour work situation as well as in understanding and remembering simple instructions; who could not remain focused or concentrate long enough to complete projects adequately, and would need special or  additional supervision.  (AR 349).  The VE opined that such an individual may get hired but would not last at any job.  (AR 350).  When questioned as to whether an individual who could occasionally lift ten pounds, and who was able to stand two out of eight hours, sit six out of eight hours, and who was limited to occasionally pushing and pulling with her right arm and leg, the VE

responded that the individual would not be able to perform any unskilled jobs available in the national economy. (Id.).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(quotations and citations omitted); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citing Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400, 91 S. Ct. at 1426-1427. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Sec'y of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1988).

///

///

**RELEVANT LEGAL FRAMEWORK**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the claimant is engaged in substantial gainful activity. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If a claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which necessitates that the claimant's impairment be compared with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national

///

economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in his previous occupation. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984). At step three, however, the claimant bears the burden to demonstrate that his impairment(s) meet or equal one of the listings, rendering her presumptively disabled. Benten ex rel. Benton v. Barnhart, 331 F.3d 1030, 1034 (9th Cir. 2003). The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail, 722 F.2d at 1498.

## ADMINISTRATIVE FINDINGS[4]

The ALJ indicated that Claimant had filed a prior disability application which was denied on December 17, 1996, based on a finding that Claimant retained the RFC to perform sedentary work. (AR 15). ALJ Webster noted that Claimant's previous application was not adjudicated and, therefore, the present application fell within the strictures of Acquiescence Ruling ("Acq. R") 97-4(9).[5] The ALJ concluded that, because Claimant did not present new or material evidence that

---

[4] The ALJ determined that Plaintiff had worked the requisite period of time to remain insured for purposes of DIB benefits at least through the January 13, 2006 date of his written decision. (AR 16, 20).

[5] Acq. R 97-4(9) was adopted in response to Chavez v. Brown, 844 F.2d 691 (9th Cir. 1988), and explains how the holding in Chavez is to be applied, noting that it is applicable only to 9th Circuit cases. See AR 97-4(9), 1997 WL 742748. Acquiescence Rulings "are binding on all components of the Social Security Administration," and accorded deference by a reviewing court. 20 C.F.R. § 402.35(b); McNabb v. Barnhart 340 F.3d 943, 944 (9th Cir. 2003).

warranted a change in her RFC since the 1996 decision, Acq. R. 97-4(9) mandates that the presumption of continuing nondisability is applicable to his decision. (AR 15).

ALJ Webster found at step one that Claimant has not engaged in substantial gainful activity since her alleged onset date. (AR 16, 20). At step two, the ALJ determined that Claimant has the following severe impairments: osteoarthritis of the right wrist and heel, residuals from plantar fasciitis, calcaneal spur and arthritis of the left heel, and depression. (Id.). At step three, the ALJ found that Claimant's severe impairments, alone or in combination, did not meet or equal "the criteria under any section of Appendix 1, Subpart P, Regulations No. 4." (AR 16; see AR 20). The ALJ discussed in detail the medical records, opinions, and assessments of Claimant's treating and consultative physical and mental-health professionals. (AR 16-17).

The ALJ evaluated Claimant's testimony as to her pain-induced limitations and found it not credible when assessed in accordance with Social Security Ruling ("SSR") 96-7p. (AR 20). ALJ Webster acknowledged that Claimant suffered some pain, but concluded that the "nature, location, onset, duration, frequency, radiation, and intensity" of her allegations were belied by the lack of aggressive pain treatment, the opinions of several physicians, third-party reports, and her daily activities. (AR 18-19). After reviewing all of the evidence, the ALJ found that Claimant retained the RFC to lift and carry ten pounds occasionally, stand and walk for two hours in an eight-hour day, sit for six hours in an eight-hour day, and is limited to simple, repetitive tasks. (AR 19, 20).

After discussing VE Dachelet's testimony, the ALJ, at step four, found that Claimant could not return to her past relevant work, as defined in 20 C.F.R. §§ 404.1565 and 416.965. (AR 19, 20). At step five, the ALJ noted that Claimant was a younger individual with more than a high school education, with no relevant transferable skills. (AR 20). At step five, the ALJ concluded that, based on the VE's testimony, Claimant's above-referenced traits, and her RFC, and using Medical-Vocational Rule 201.21 as a framework, there were a significant number of sedentary, unskilled jobs available that Claimant could perform. (AR 19, 20). Accordingly, ALJ Webster found that Claimant was not disabled and, therefore, not entitled to DIB or eligible for SSI payments. (AR 20-21).

///

///

**ISSUES**

In her opening brief, Claimant alleges the following claims of error:

A.  The ALJ erroneously accepted the opinions of non-examining state physicians over the opinions of Claimant's examining and treating psychiatrists when determining the severity of Claimant's depression;

B.  The ALJ misapplied the Medical-Vocational Guidelines with respect to Claimant's age; and

C.  The ALJ failed to provide adequate reasons for finding Claimant's pain testimony not credible.

This Court must uphold the Commissioner's determination that a claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Improper Review and Application of the Mental Health Records**

Claimant argues that the ALJ failed to show the appropriate degree of deference to the opinions of Claimant's treating and consulting Board-Certified psychiatrists, Drs. Emmanuel J. Fantone and Michael S. Barnett, respectively. (Doc. 2, p. 4). Claimant contends that the ALJ erroneously relied on an outdated 2004 assessment prepared by a non-examining state physician who opined that, with continued treatment, Claimant would be capable of performing simple repetitive tasks by April 2005. (Id.). According to Claimant, the ALJ provides no explanation, much less "clear and convincing" or "specific and legitimate" reasons, for rejecting the opinions of Dr. Fantone or Dr. Barnett, both of which are supported by the medical records, and, instead, adopting the outdated opinion of the non-examining state physician.[6] (Id. at 5-6).

---

[6] Claimant also contends that ALJ Webster erroneously ignored the GAF levels of 50 and 52 ascertained by Drs. Barnett and Fantone, respectively. (Doc. 22, p. 4). Claimant's emphasis on the ALJ's failure to incorporate her GAF lacks merit. Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002); Fisher v. Astrue, 2007 WL 4150314, *6 (S.D.Ind. 2007). The GAF reflects the "clinician's judgment of the individual's overall level of functioning and includes psychological, social and occupational functioning." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994). Thus, while a GAF score may help the ALJ assess the Claimant's ability to work, it is not essential and the ALJ's failure to rely on the GAF does not constitute an improper application of the law.

Courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (consulting or examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), amended 1996. A treating physician's opinion is given special weight because of his familiarity with the claimant and her condition. Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, the opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester, 81 F.3d at 830. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).

In Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over the opinion of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." Orn, 495 F.3d at 632 (citation and quotation omitted). "By contrast, when an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence." Id. (citation omitted). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

///

---

Howard, 276 F.3d at 241; Fisher, 2007 WL 4150314, *6.

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In that event, the ALJ is instructed by §§ 404.1527(d)(2) and 416.927(d)(2) to consider the factors listed in §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; Orn, 495 F.3d at 633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Orn, 495 F.3d at 633.

As an initial matter, there is no indication that Claimant's treating psychiatrist, Dr. Fantone, was asked to provide his opinion as to whether Claimant could work and/or what, if any, non-exertional limitations would be imposed on Claimant due to her emotional problems. (See generally AR 244-249; 289-306). Nor do his treatment records refer to any limitations with respect to Claimant's ability to return to work and, if so, under what circumstances she could do so. (Id.).

The ALJ summarily discussed the records provided by Dr. Fantone, noting that Claimant first saw Dr. Fantone in June 2004 for an initial assessment of her mental-health status. (AR 17; see AR 247-249). ALJ Webster noted that Dr. Fantone diagnosed Claimant as suffering from major depressive disorder and panic disorder,[7] and that Claimant felt better after taking prescription medications for one month. (AR 17; see AR 246-249). The ALJ further observed that, in March 2005, despite Dr. Fantone's report that Claimant had been emotionally stable for 12 months, Claimant stated she needed more frequent visits, adding that she was amenable to seeing a nurse practitioner. (AR 17, 299).

---

[7] ALJ Webster stated that Dr. Fantone's diagnosis was "panic disorder with agoraphobia." (Doc. 17). The record reflects that Dr. Fantone reported that Claimant did not suffer from agoraphobia. (AR 249). For purposes of this analysis, the ALJ's misstatement is irrelevant.

12

ALJ Webster also summarized the July 29, 2004, opinion provided by consulting psychiatrist Michael S. Barnett. (AR 17, 19). The ALJ noted that Dr. Barnett's diagnosis and resulting limitations were based on Claimant's subjective complaints and a mental status examination, which revealed that Claimant's memory was intact. (Id.). The ALJ further observed that Dr. Barnett examined Claimant one month after she initially sought psychiatric treatment, and that Dr. Barnett did not have the benefit of reviewing Claimant's medical records before preparing his opinion. (Id.).

Based on the foregoing, ALJ Webster rejected Dr. Barnett's opinion that Claimant's mental problems would make it difficult for her to work an 8-hour day in that she would have problems concentrating, getting along with others, understanding even simple instructions, and adapting to change in the work environment. (AR 19, see AR 239-241). The ALJ noted that Dr. Barnett had seen Claimant only once, and his lack of familiarity with her medical history prevented him from evaluating Claimant's "long-term functional capacity." (AR 19). Instead, ALJ Webster relied upon the opinions of state agency physicians, finding that they were consistent with the objective medical evidence, reasonably considering Claimant's subjective complaints, in light of the minimal objective physical and mental findings. (AR 19). The record reflects that Dr. Evangeline Murillo[8] is a state agency physician who assessed Claimant's mental and physical limitations. Dr. Murillo's assessment of Claimant's mental limitations is based on the progress records of Dr. Fantone, Claimant's treating psychiatrist. (AR 244-249, 265-266). In a written assessment dated September 27, 2004, Dr. Murillo concluded that, if Claimant continued psychiatric treatment, she would be able to perform a job limited to simple, routine tasks by April 2005. (AR 266). ALJ Webster concluded that Claimant's emotional impairments limited her to a job involving simple, repetitive tasks, which is consistent with Dr. Murillo's assessment. (AR 19, 20).

Here, ALJ Webster was presented with the conflicting opinions of consulting psychiatrist Dr. Barnett, who saw Claimant one time, and non-examining state physician Dr. Murillo, who relied on the progress records of Claimant's treating psychiatrist. (AR 19, 239-241, 250-266). Dr. Barnett did not have the benefit of Claimant's medical history other than a family doctor's note indicating

---

[8] It is not evident whether Dr. Murillo specializes in psychiatry or not. (See generally AR 250-66).

panic attacks and sinus pain, and accordingly, relied primarily upon Claimant's subjective complaints. (AR 239). Both assessments were issued within three months of each other. (AR 239-241 (July 29, 2004); AR 250-266 (September 27, 2004)). The ALJ relied on the opinion of the non-examining state physician because, unlike Dr. Barnett, she had a more comprehensive knowledge of Claimant's psychiatric history, upon which her assessment was based. (AR 19, 20). Because Dr. Barnett's opinion was based primarily on Claimant's subjective complaints, whereas Dr. Murillo's opinion was based on, and supported by, Dr. Fantone's independent, treatment records, the ALJ provided specific and legitimate reasons that were supported by substantial evidence in the record for accepting the opinion of a non-examining physician over that of Dr. Barnett. Lester v. Chater, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d at 502)); see Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996), ("the findings of a nontreating, non-examining physician can amount to substantial evidence, so long as other evidence in the record supports those findings"). In essence, by adopting the state agency physician's opinion, which was based on the records of Claimant's treating psychiatrist, the ALJ circuitously relied on the records of Dr. Fantone rather than the opinion of consultant Dr. Barnett. The ALJ did not err when he relied upon the opinion of the state agency physician.   Accordingly, Claimant's first claim should be denied.

**B.  Misapplication of Medical-Vocational Guidelines**

Claimant next asserts that the ALJ mechanically applied the Medical-Vocational Guidelines ("Grids") in violation of Social Security Rulings ("SSR") 82-46c and 83-46c, which require that, if the applicant's age falls within the borderline such that the passage of a few months would alter the results, the ALJ must flexibly apply the Grids. (Doc. 22, p. 6). Claimant contends that, because the ALJ issued his decision on January 13, 2006, and she would turn 50 on July 19, 2006, the ALJ should have applied Rule 201.14 of 20 Pt. 404, Subpt. P, App. 2, which would have placed her in the "closely approaching advanced age" category, thereby rendering her disabled. (Id. at 7). Claimant contends that instead, the ALJ erroneously mechanically placed Claimant in the "younger individual" category set forth in Rule 201.21. (Id.).

As an initial matter, the ALJ used Rule 201.21 solely as a framework, with which he also considered the vocational expert's testimony to determine that there were a significant number of

jobs that Claimant could perform. (AR 20). Moreover, the ALJ did not err in finding that Claimant, who was approximately one week younger than 49-1/2 years old when he issued his January 13, 2006, decision, was a younger individual.[9] (Id.). The regulations for both DIB and SSI provide that an individual under age 50 is deemed a younger individual, but explain that, under certain circumstances, a 49-year-old person who is closer to age 50 may be placed in the higher age category. 20 C.F.R. §§ 404.1563, 416.963. Further, the regulations state that, if the applicant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the applicant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of [the applicant's] case." 20 C.F.R. §§ 404.1563(b), 416.963(b). The ALJ ultimately determines whether the borderline claimant's situation warrants that he exercise his discretion to place the claimant in the older age category. Id.; see Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988) (noting that "[l]ine drawing is reasonable and in accordance with the express language and purpose" of the Grids and that if lines were not drawn somewhere, the Grid system could not be efficiently utilized).; see also Fosha v. Barnhart 372 F.Supp.2d 948, 955 (S.D.Tex.2005) (noting that SSR 82-46c provides guidance as to when the ALJ should exercise this discretion, but observing that, because SSR 83-10 refused to fix guidelines as to when a borderline situation exists because those guidelines would, themselves, constitute a mechanical approach, there is no mandated, automatic transfer to the older age bracket in close cases).

      Because the ALJ may use his discretion when determining whether to place a claimant who chronologically falls within a few months of the next higher age category into that category, the mere fact that ALJ Webster grouped Claimant, who was more than six months away from the next age category, into her chronological age category, is no reason to conclude that he improperly applied the guidelines in a mechanical fashion. Accordingly, Claimant's second claim should be denied.

///

---

[9] A younger individual is defined as a person between the ages of 18 and 49. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h). An individual of advanced age is 50 to 59. See id., § 201.00(g) (discussing individuals closely approaching advanced age).

**C. Credibility of Testimony**

Claimant next claims that the ALJ's stated reason for finding her allegations not credible, i.e., her lack of treatment consistent with chronic pain syndrome, failed to provide the specific reasons legally required to explain why he found her not credible. (Doc. 22, p. 7).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-1282. If claimant satisfies this test – and if there is no evidence of malingering – the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. Such specificity is crucial so as to enable effective judicial review. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). Thus, an ALJ's decision "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d at 835. Grounds for an adverse credibility finding include, but are not limited to, inconsistencies either in the claimant's testimony or between the claimant's testimony and conduct, the claimant's daily activities and work record, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains, and the lack of adequate explanation for a claimant's failure to follow a prescribed course of treatment. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7p.

Here, ALJ Webster discussed Claimant's physical and mental impairments and noted that he was required to consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based

on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p."[10] (AR 17).  The ALJ proceeded to discuss the record evidence, noting that, with respect to Claimant's documented ankle and heel problems, and the resulting pain that comprised one of the reasons for which she claimed that she was disabled, Claimant's treating physicians opined that her pain was exaggerated, noted that she was averse to conservative treatment, and released her to work with no permanent restrictions.  (AR 16; see AR 145-56, 171, 179-81).  The ALJ further discussed Claimant's consultative examination and pointed out that, after she underwent six months of physical therapy, Claimant reported decreased pain in her right ankle.  (AR 16-17; see AR 182-85, 207).  ALJ Webster observed that Claimant's treating and consulting physicians diagnosed, inter alia, right hand contusion, chronic right ankle pain syndrome, osteoarthritis in both arms, and increased radiotracer activity in her left fifth toe and right tibia which were not markedly abnormal.  (AR 16-17; see AR 185, 198-202, 228-229).  The ALJ then summarized Claimant's psychiatric treatment, as discussed in Section A above.  (AR 17, 19).

    ALJ Webster acknowledged that Claimant's various physical impairments caused her some pain, but found that neither the medical records nor Claimant's self-reported activities corroborated her testimony as to the intensity, onset, frequency, nature, location, and radiation of her pain.  (AR 18).  In addition, ALJ Webster noted that, despite the alleged intensity, severity, and frequency of Claimant's pain, she had not been referred for treatment generally used to alleviate chronic pain syndrome, citing as examples biofeedback and use of a TENS unit.  (Id.).  The ALJ further found that, despite her alleged pain and related limitations, Claimant reported that she cooked, shopped, did the laundry, attended church, and performed various household chores that would have been inconceivable given her alleged pain.  (Id.; see also AR 125-128).  Finally, ALJ Webster cited the exertional restrictions set forth by non-examining state agency physicians and consultants, and found

---

[10] SSR 96-7p directs the ALJ to consider not only objective medical evidence, but also the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the effectiveness and adverse side effects of prescribed medications; (5) other treatments for the relief pain and symptoms; (6) any other measures used by the individual to relieve the pain and symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions resulting from pain or other symptoms.  SSR 96-7p.

them consistent with the medical records, and inconsistent with Claimant's reported limitations. (AR 18-19; see AR 185, 204-206, 250-70).

It is sufficiently clear from the record that the ALJ's decision to discount Claimant's testimony was based on, inter alia, discrepancies between her testimony and the medical records, opinions, statements she made to physicians, and her reported daily activities. See Light, 119 F.3d at 792; SSR 96-7p.  The ALJ, therefore, provided clear and convincing reasons for discounting Claimant's subjective complaints of pain and limitations to the extent alleged, and these reasons were supported by substantial evidence in the record and were sufficiently specific to enable a reviewing court to conclude that the ALJ rejected Claimant's testimony on permissible grounds and did not arbitrarily discredit Claimant's testimony.

## CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded Claimant is not disabled.  This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS:

1. That Claimant's Social Security complaint be DENIED; and

2. That Judgment be ENTERED for Defendant Michael J. Astrue and against Claimant Jackye Smith.

These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than fifteen (15) days after service of these Findings and Recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be filed and served no later than eleven (11) days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d).   The District Judge will review the Magistrate Judge's Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).

///

1  The parties are advised that failure to file objections within the specified time may waive the right to
2  appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4  IT IS SO ORDERED.

5  Dated:   **February 21, 2008**                             **/s/ Theresa A. Goldner**
                                                              UNITED STATES MAGISTRATE JUDGE